## Sechler Carriage Company v. C. E. Dryden.

1. SALES—*Whether Fraudulent per se Where Possession is Retained by Former Owner—Notice.*—A sold certain property to B, who being unable to pay for it, resold it to A, but retained possession under a contract providing for its sale upon commission. In a suit between A and an officer, holding an execution against B, *it was held* that under the circumstances, so far as they appeared from the evidence, actual notice to B's creditors was as effectual to apprise them of A's right as a change of possession would have been, and that the sale was not fraudulent *per se.*

**Replevin,** against a sheriff. Appeal from the Circuit Court of Mercer County; the Hon JOHN J. GLENN, Judge, presiding. Heard in this court at the May term, 1897. Reversed and remanded. Opinion filed September 20, 1897.

BROCK & GRAHAM, attorneys for appellant.

We concede the law of this State to be that a purchaser of personal property, in order to acquire a title thereto as against creditors and *bona fide* purchasers of the vendor, without notice, must reduce the property purchased to possession before the rights of such creditor or purchaser attach thereto, but we claim that where such creditor or purchaser has actual notice of the sale, as both appellee and Robinson, the agent of Kingman & Co., had in this case, that the rights of the purchaser will be protected. O'Leary v. Bradford, 39 Ill. App. 182; Simpson Brick Press Co. v. Wormley, 61 Ill. App. 460; Huschle v. Morris, 131 Ill. 593.

BASSETT & BASSETT, attorneys for appellee.

A subsequent creditor stands in the same condition as a subsequent purchaser. In the following cases it does not appear that the creditor's debt accrued before the transfer, yet they were permitted to attack the sale. Dexter v. Parkins, 22 Ill. 144; Thompson v. Yeck, 21 Ill. 73.

And in the following cases the judgments were entered after the date of the sale, and the right to levy sustained. Rhines v. Phelps, 3 Gilman, 460; Cass v. Perkins, 23 Ill. 382; Reese v. Mitchell, 41 Ill. 367.

Where a chattel mortgage is not acknowledged and recorded, as required by statute, notice of its existence does not affect creditors and purchasers, although the mortgage may be binding between the parties. Frank v. Miner, 50 Ill. 444. See also Porter v. Dement, 35 Ill. 480; Forest v. Tinkham, 29 Ill. 141; Sage v. Browning, 51 Ill. 217; McDowell v. Stewart, 83 Ill. 538.

MR. JUSTICE DIBELL DELIVERED THE OPINION OF THE COURT.

S. A. Tornquist, of North Henderson, conducted a blacksmith shop, and in connection therewith sold farm machinery, buggies, sleighs, etc., and had been in such business for a number of years. Kingman & Co. obtained an execution against his property and the sheriff levied said execution upon certain personal property in the possession of Tornquist, and among other things upon two top buggies, one road wagon, and one sleigh. Appellant claimed to be the owner of said property, and replevied the same from the sheriff. There was the usual declaration in replevin, pleas on *non cepit, non detinet*, and property in Tornquist, and the lawful seizure thereof under said execution, with special replication to said last plea of property in the plaintiff and not in Tornquist. Upon a jury trial of said issues at the close of the plaintiff's testimony the court excluded the evidence and instructed the jury to find a verdict for the defendant, which was done. Motion for a new trial being overruled, and judgment for defendant rendered, the plaintiff below brings the cause to this court by appeal.

The evidence introduced by the plaintiff tended to show the following facts: Both appellant and Kingman & Co. had sold goods to Tornquist. In August, 1896, Tornquist was embarrased financially, and on August 10, 1896, Caldwell, an agent of appellant, visited Tornquist. He had with him one note of Tornquist to appellant, and there was another unpaid note of like character not there present. Caldwell asked Tornquist to sell back to appellant what goods he had on hand that he had bought from appellant and which were not paid for. The parties found among

Sechler Carriage Company v. Dryden.

his goods in his store-house the two buggies, one road wagon and one sleigh in controversy in this case, all which Tornquist had bought from appellant, and Tornquist sold them back to appellant at the invoice price, which was $147. These goods were all standing by themselves, separate from other goods but under the same roof with them. There was about $70 due on the note Caldwell had there present, and that was surrendered to him, and a receipt for the balance was given to Tornquist reciting that it was to be indorsed on the other note which was in the possession of the company; and said payment was afterward indorsed on said other note. Caldwell then made an arrangement with Tornquist that he should act as agent of appellant and have the exclusive sale of their goods on commission. He was not to sell on credit except to persons whom Widney, the cashier of the local bank, should approve. The usual printed and written commission contract was entered into between them, and Tornquist executed another instrument reciting that he held these articles above named in his warehouse as the property of appellant. Caldwell did not take manual possession of these articles, though they were examined and perhaps moved about some. He went away and left the goods in the possession of Tornquist for sale on commission for appellant under such written contract. A few days later, Robinson, the agent of Kingman & Co., came to Tornquist, who was also owing Kingman & Co. for goods they had sold him, and Robinson made a like arrangement with Tornquist that Tornquist should sell to Kingman & Co. the goods he had on hand which he had bought of Kingman & Co., and have them applied on the indebtedness he owed Kingman & Co. Tornquist also turned over to Robinson some notes and accounts to apply on the same indebtedness. Robinson also went away leaving the goods in the possession of Tornquist. At a later day Robinson came back and took away the goods he had so bought from Tornquist for Kingman & Co. At some time, not shown in evidence, Kingman & Co. obtained the execution in question against Tornquist, and after the events above narrated said

execution was placed in the hands of the sheriff. While Robinson was there making this arrangement with Tornquist, both when he bought the goods and when he came for them, Tornquist told him the two top buggies, road wagon and sleigh here in controversy were the property of appellant. Tornquist had no other buggies but these in his possession. When the sheriff came to levy the execution Tornquist told him that this property in question belonged to appellant. Widney, the cashier of the bank, whose duty it was to approve any notes that Tornquist might take upon the sale of said property before appellant would receive them, also told the sheriff before he levied that the property belonged to appellant. Robinson ordered a levy upon this property notwithstanding the notice, and the sheriff levied accordingly.

This being the state of the proofs, we hold that it was error for the court to refuse to submit the case to the jury. The action of the court below is sought to be sustained by the general rule that a sale of chattels unaccompanied by a change of possession is fraudulent in law and void as to creditors of the vendor. This position, however, fails to take into consideration the proof tending to show notice to Kingman & Co., the only creditors concerned. Our Supreme Court has held, as do the authorities generally, that where the transfer of personal property is founded on a good consideration, and there is no intention in fact to defraud creditors, the legal presumption of fraud created by the non-delivery of possession does not arise if the transfer or transaction is a matter of publicity, or notoriety. Lowe v. Matson, 140 Ill. 108. Here the transaction was entirely legitimate between the parties; there was nothing to indicate any other than an honest purpose to pay an honest debt by the resale of the very goods which had created the original debt; the transaction was complete as between the parties without any delivery of possession; and there was at least a symbolical delivery of possession by the instruments executed. Added to this we have actual and explicit notice to the agent of Kingman & Co. at both of his visits to

North Henderson, and this property twice pointed out to him as the property of appellant, and all this before the sheriff received the execution now in question. As to Kingman & Co., the sale was open and notorious. Indeed, for all we know from this record, it may be that the indebtedness to Kingman & Co., upon which they obtained their execution, was not created till after notice of this transfer, or the execution may have been for a tort and not for the collection of a debt. If Kingman & Co. were not creditors as to the sum for which the execution was issued till after notice to their agent that appellant owned these goods, we are unable to see how the sale could have been fraudulent either in law or fact as to them. Kingman & Co. were not misled nor in any way injured by the detention of the goods in the possession of Tornquist for sale on commission. We are of opinion that under the circumstances of this case, so far as they appeared from appellant's evidence, actual notice to the creditors was as effectual to apprise them of appellant's rights as a change of possession would have been. It was error for the court to exclude the evidence and direct a verdict for defendant, for which error the judgment is reversed and the cause remanded.