## Joseph M. Hiser v. Henry W. Walbaum.

### Gen. No. 4,673.

1. Sale—*what not conclusive evidence of fraudulent character of.* A sale is not conclusively fraudulent as against creditors merely because the purchaser fails to take possession of the property sold.

Action of replevin. Appeal from the Circuit Court of DuPage county; the Hon. Linus C. Ruth, Judge, presiding. Heard in this court at the April term. 1906. Reversed and remanded. Opinion filed October 16, 1906.

Bunge & Thorpe, for appellant.

James Turnock, for appellee.

Mr. Justice Thompson delivered the opinion of the court.

This was a suit in replevin begun February 1, 1895, by Henry W. Walbaum to recover possession of certain chattels from Joseph M. Hiser, sheriff of DuPage county. The declaration contains the usual counts, viz.: That such sheriff wrongfully took and detained said chattels of plaintiff; that the defendant wrongfully detained other chattels of plaintiff; with the ordinary count in trover, each count specifically describing the chattels. Pleas were filed of *non cepit; non detinet;* not guilty of trover; property in one Kistler; and that defendant as sheriff of DuPage county was possessed of the same by virtue of a writ of attachment sued out at the instance of Curtis & Heartt.

Upon the trial at the close of the evidence the court instructed the jury "to find the issues for the plaintiff and the right of possession of the property in question in the plaintiff." A motion for a new trial being overruled, judgment was rendered for plaintiff, and the defendant appeals.

The evidence shows that Walbaum owned a dairy

farm in DuPage county which he had rented to A. J. Kistler for two years, the term expiring March 1, 1895. At the time of making the lease Walbaum took from Kistler a chattel mortgage on certain cows, horses and farming implements, being part of the chattels involved in this suit, to secure a note for $1,747 due in two years from February 26, 1903. The mortgage was duly acknowledged and recorded. Kistler entered into possession of the farm and occupied it as tenant until the 21st day of January, 1895, when Walbaum went to the farm and he and Kistler there made a bargain, by which the lease was canceled, Walbaum surrendering his note and mortgage and indorsing on the note the balance due thereon paid by personal property that day conveyed to him by Kistler, who gave Walbaum a bill of sale of the items of property he had sold to Walbaum to pay the note. Walbaum at the same time hired Kistler to work for him at $30 per month, and take full charge of the farm, and went away leaving Kistler in charge of the farm and personal property as before. After the bill of sale was made, Walbaum had auction notices printed and some of these were posted up on January 27th in the post office and in public places in the neighborhood of the farm, and on the morning of January 28th, one of the bills was posted up in Curtis & Heartt's store, Walbaum at that time having a conversation with Curtis about it. On the 28th of January an attachment writ was issued by the circuit clerk of DuPage county at the instance of Curtis & Heartt for the sum of $328.02 against the property of A. J. Kistler, and it was by Sheriff Hiser levied upon all the property that is in controversy in this suit. On the first day of February the replevin writ in this case was issued, and the coroner replevied from said sheriff all the property levied upon by the attachment, and delivered the same to Walbaum.

The evidence of Walbaum showed that he had permitted Kistler to sell and dispose of some of the mort-

gaged property, while the mortgage was in force. It was also shown by Walbaum that in conversation in Curtis & Heartt's store on the morning of January 28th, Walbaum said: "There is a hay rake mentioned in that bill of sale that is not really mine; Kistler says it is not paid for, and it ought to be hay rack instead of hay rake;" that Curtis & Heartt then said Kistler owed them for it, and Walbaum said: "My understanding is Kistler owes you for a hay rake he has not paid for, and it is in the bill of sale, and if you want me to I will sell it and turn the money over, or if you want to get it you can do so," and "they agreed I should sell it and turn the money over."

Upon a comparison of the property described in the chattel mortgage with that in the bill of sale, the list of chattels levied on by the writ of attachment, and the list of chattels replevied, it appears that all the chattels attached were replevied; amongst the property levied on under the writ of attachment and replevied, are one shoat, one grain seeder, one hay rake, one stack of corn, one bob sled, and one single harness, none of which are mentioned either in the bill of sale or in the chattel mortgage. The writ of replevin and the return upon it show these were all taken from the sheriff. The affidavit for replevin does not mention the grain seeder, the hay rake, the stack of corn or the single harness, and Walbaum does not claim he had any interest in any property except that described in the bill of sale.

The court instructed the jury to find that these goods, together with those described in the bill of sale, belonged to appellee, with no pretense that appellee had any interest whatever in the shoat, the grain seeder, the hay rake, the stack of corn, the bob sled or the single harness, or any right to the possession of any of them. We are unable to conceive any theory upon which the verdict can be sustained.

As to the property that was included in the bill of

sale, counsel for appellant insist there was no possession taken by Walbaum before the levy of the attachment, and that therefore the sale was constructively fraudulent, and that an instruction should have been given directing a verdict for appellant.

The transaction between Walbaum and Kistler was one which they had the right to enter into, and the question is, had Walbaum such possession as is good against creditors. Walbaum having permitted Kistler to sell property covered by the chattel mortgage, it may be a question whether the taking of the bill of sale was not a method of foreclosing the chattel mortgage, for the purpose of avoiding any claim that the chattel mortgage had been rendered invalid as to third parties.

The authorities of this state are somewhat conflicting upon the question of the effect of the failure of a purchaser to take actual possession of personal property; the ordinary rule being that an actual delivery to the purchaser is indispensable to render a sale valid against creditors and *bona fide* purchasers. Upon an examination of the cases in this state laying down that rule, it will be found that, with the exception of the cases of Hewett v. Griswold, 43 Ill. App. 43; Howell v. Fisk, 52 Ill. App. 310, and Schultz v. Reader, 69 Ill. App. 295, there was no claim that the party contending for the rule, that failure to take possession is conclusively fraudulent, had actual notice of the sale.

In the cases of Lowe v. Matson, 140 Ill. 108, and Sechler Carriage Co. v. Dryden, 71 Ill. App. 583, it was held that the rule of law, that a sale of chattels unaccompanied by a change of possession is fraudulent in law as to creditors of the vendor, does not apply to the ordinary purchase and sale of chattel property, when the sale is of such a public character as to give notoriety thereto; that when a party is not misled nor in any way injured by the detention of the goods, the sale would not be fraudulent in fact or law, or, as was said

in the Matson case, *supra,* quoting from Chitty: "Where the transfer of personal property is founded on a good consideration and there is no intention in fact to defraud creditors, the legal presumption of fraud created by the non-delivery of possession does not arise if the transfer or transaction is a matter of publicity or notoriety."

It was a question for the jury to determine, concerning the chattels included in the bill of sale, from all the evidence and circumstances surrounding the sale, whether Curtis & Heartt had notice of the sale to Walbaum, and whether the transaction was so notorious and public in its character as to be equivalent to a surrender of possession.

For these reasons the judgment is reversed and the cause remanded.

*Reversed and remanded.*